# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO GONZALEZ,<br>　　　　Plaintiff,<br>　v.<br>COMMISSIONER OF SSA,<br>　　　　Defendant. | Case No. 16-cv-05310-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 27 |

Plaintiff Alejandro Gonzalez seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for benefits or further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On October 7, 2011, Plaintiff applied for Title II Disability Insurance Benefits, alleging a disability that began on October 10, 2010. (Administrative Record ("AR") 15, 382.) Plaintiff asserted medical conditions of back pain, left knee pain, pain in the right hand, pain in the right foot, and mental limitations. (AR 128.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 128, 135.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 143-44.)

Beginning in March 2011, Plaintiff began seeing Vatche Cabayan, M.D., a board-certified orthopedist. (AR 1013.) On March 1, 2011, Dr. Cabayan conducted an orthopedic consultation of Plaintiff, during which Plaintiff complained of grip weakness, numbness, tingling, on and off pain,

exacerbation of his condition when writing, dropping items while holding them, and pain on awakening. (AR 1014.) Based on a physical examination, Dr. Cabayan found no evidence of a ganglion cyst, swelling, or deformity, and concluded that there was no thenar or hypothenar wasting. (AR 1015.) Dr. Cabayan also found that Plaintiff demonstrated a full range of motion of the wrist with a little discomfort on radial deviation, but that his range of motion was not limited. Dr. Cabayan assessed a sprain, possible triangular fibrocartilage complex tear, and De Quervain's tenosynovitis, all to the right wrist.

On March 29, 2011, Dr. Cabayan examined Plaintiff and found that Plaintiff could not return to his usual job, and that he should avoid lifting 20 pounds and forceful gripping, grasping, and torqueing with push-off. (AR 1067.) Dr. Cabayan also recommended that Plaintiff should not work at or above shoulder level. On August 25, 2011, Dr. Cabayan presented a treatment plan for Plaintiff to request authorization for carpal tunnel release surgery, but did not otherwise state if Plaintiff had any limitations. (AR 1008.)

On May 8, 2012, Dr. Cabayan found that Plaintiff "has difficulty with arduous job [sic] with torqueing and lifting." (AR 992.) On June 29, 2012, Dr. Cabayan found "limitations with gripping, grasping, torqueing, and lifting." (AR 990.) On July 3, 2012, Dr. Cabayan concluded that Plaintiff could not handle more than 10 or 15 pounds of lifting, and should avoid squatting, kneeling, stairs, pushing and pulling, prolonged standing and walking, bending, and uneven surfaces. (AR 1023.) On July 24, 2012, Dr. Cabayan found that Plaintiff should "avoid gripping, grasping, torqueing, and lifting greater than 10 pounds," although he could "continue with intermittent sitting, standing, and walking as tolerated." (AR 984.) On August 7, 2012, Dr. Cabayan found restrictions of avoiding lifting 10 or 15 pounds, and avoiding squatting and kneeling, stairs, pushing, pulling, prolonged standing and walking, bending, and uneven surfaces. (AR 964.) On August 17, 2012, Dr. Cabayan found that Plaintiff should avoid forceful gripping, grasping, torqueing, twisting, and lifting greater than ten pounds, but that he could do intermittent sitting, standing, and walking as tolerated. (AR 982.)

On September 6, 2012, Dr. Cabayan advised that Plaintiff be active both mentally and physically and to continue stretching and strengthening exercises, but did not otherwise advise of

any restrictions. (AR 958.) On September 13, 2012, Dr. Cabayan found that Plaintiff should avoid forceful gripping, grasping, torqueing, twisting, and lifting more than ten pounds, but that he could perform intermittent sitting, standing, and walking as tolerated. (AR 980.) On October 4, 2012, Dr. Cabayan found that Plaintiff should avoid repetitive bending, twisting, stairs, hills, and inclines, but that he should continue intermittent sitting, standing, and walking as tolerated. (AR 955.) On October 16, 2012, Dr. Cabayan found that Plaintiff should avoid forceful pushing, pulling, grabbing, and lifting more than ten pounds, and that Plaintiff could do intermittent sitting, standing, and walking as tolerated. (AR 978.) On October 22, 2012, Dr. Cabayan found that Plaintiff should avoid repetitive bending and twisting at the waist, intermittent stairs, hills, inclines, squatting, and bending, but that Plaintiff could do intermittent sitting, standing, and walking as tolerated. (AR 953.) On October 31, 2012, Dr. Cabayan found that Plaintiff should avoid repetitive bending and twisting at the waist, stairs, hills, inclines, squatting, and bending. (AR 951.)

On November 13, 2012, Dr. Cabayan found that Plaintiff should avoid forceful pushing, pulling, grabbing, and lifting more than ten pounds. (AR 976.) On December 4, 2012, Dr. Cabayan found that Plaintiff should avoid repetitive bending and twisting at the waist, stairs, hills, inclines, squatting, and bending. (AR 949.) On December 12, 2012, Dr. Cabayan found that Plaintiff should avoid overhead reaching, forceful pushing, pulling, grabbing, heavy lifting, and repetitive use of upper extremities. (AR 974.) On December 18, 2012, Dr. Cabayan found that Plaintiff could do intermittent sitting, standing, walking with no squatting, and kneeling, but could not perform any forceful activities with regard to his knees. (AR 1001.)

On January 11, 2013, Dr. Cabayan found that Plaintiff should avoid squatting, kneeling, bending, inclines, hills, jumping, hopping, stairs, and ladders, and that he should limit himself to twenty pounds of lifting without having to carry it for major distances. (AR 999.) In what appears to be Plaintiff's final visit with Dr. Cabayan, on May 16, 2013, Dr. Cabayan noted that Plaintiff "c[ould] barely walk," and that Plaintiff had "limitation[s] with sitting, standing, walking, squatting, kneeling, stairs, ramps, inclines, and hills." (AR 1071.)

The assigned ALJ held an initial hearing on July 21, 2014, at which Plaintiff and

3

1 Vocational Expert ("VE") Jeffrey Malmuth testified. (AR 15.) The ALJ held a supplemental hearing on March 17, 2015, at which Plaintiff, impartial medical experts Ronald E. Kendrick, M.D. and Nathan Strahl, M.D., and VE Joel M. Greenberg testified. At the second hearing, the ALJ presented VE Greenberg with a hypothetical of an individual who could lift ten pounds frequently and fifteen pounds occasionally, stand and walk four hours out of eight, sit four hours of eight with a change of position every forty-five minutes, use upper extremities frequently, and had no foot controls on the right leg and occasional control on the left. (AR 75.) The individual also could not kneel, crawl, use ladders or ropes or scaffolds, be around dangerous moving machinery, use ramps and stairs, stoop, and crouch. The ALJ inquired what unskilled jobs such an individual could perform. Based on this hypothetical, VE Greenberg testified that such an individual could work in the clerical field, the inspection field, and the packaging field. (AR 76-77.) In response to Plaintiff's attorney query as to the reaching requirement of these jobs, VE Greenberg indicated that frequent reaching was required. (AR 77.) Plaintiff's attorney then asked if an individual could perform the jobs limited to occasional reaching, and VE Greenberg stated that he would not. The ALJ then asked if all sedentary and light, unskilled jobs would be eliminated if reaching was occasional. (AR 78.) VE Greenberg stated that it would if bilateral reaching was limited.

The ALJ issued an unfavorable decision on April 8, 2015. (AR 15-27.) Plaintiff's request for review of the ALJ's decision was filed with the Appeals Council on June 1, 2015. (AR 7.) The Appeals Council denied Plaintiff's request for review on August 2, 2016. (AR 1-3.) On September 16, 2016, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

On April 19, 2017, Plaintiff filed a motion for summary judgment. (Plf.'s Mot., Dkt. No. 23.) On June 23, 2017, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 27.) Plaintiff did not file a reply.

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial

evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick*, 157 F.3d at 721. At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the

burden of proof in steps one through four. *Bustamante*, 262 F.3d at 953-954. The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.  THE ALJ'S DECISION

On April 8, 2015, the ALJ issued an unfavorable decision. (AR 15-27.) At step one, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since October 10, 2010, the alleged onset date. (AR 17.)

At step two, the ALJ identified the following severe impairments: right ankle tendinosis, right knee chondromalacia, left knee osteoarthritis, status post arthroscopy, L4-5 disc protrusion, obesity, depressive disorder, anxiety disorder, pain disorder, and tension headaches. (AR 17.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 18.) The ALJ explained that the medical record did not meet a listing level major dysfunction of a joint, that obesity was no longer a listed impairment, and that Plaintiff's mental impairments did not cause at least two "marked" limitations. (AR 18-19.)

At step four, the ALJ determined that Plaintiff had a residual functional capacity ("RFC") to perform light work, except that Plaintiff could: lift and/or carry fifteen pounds occasionally and ten pounds frequently; stand and/or walk four hours in an eight-hour workday and sit six hours in an eight hour workday, if given the flexibility to alternate sitting and standing every forty-five minutes for two minutes; frequently reach, handle, finger and feel with the upper extremities; occasionally operate foot controls with the left lower extremity and never operate foot controls with the right lower extremity; occasionally crouch, stoop, and balance, but never climb ladders, ropes, scaffolds, kneel, crawl, or be exposed to unprotected heights or dangerous, rapidly moving machinery; and could perform simple, routine, repetitive tasks and tolerate occasional interaction with coworkers and the public. (AR 19-20.)

The ALJ first reviewed a May 2012 Third Party Function Report submitted by Plaintiff's wife, which stated that Plaintiff's impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, memorize, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. (AR 20.) Plaintiff's wife also stated that he

could walk ten minutes before needing to rest for five minutes and could not pay attention longer than three minutes. The ALJ also summarized Plaintiff's testimony, in which he stated that he experienced constant pain in the back, knees, and hands; had frequent headaches; and had difficulty sleeping and poor memory. (AR 20.)

The ALJ found, however, that the symptoms described by Plaintiff and his wife were not entirely credible. (AR 20.) After summarizing the medical evidence, the ALJ gave the greatest weight to the medical experts, Dr. Kendrick and Dr. Strahl. (AR 24.) Dr. Kendrick had testified that he believed Plaintiff could lift and carry fifteen pounds occasionally and ten pounds frequently, stand and walk four hours in an eight-hour workday, and sit six hours in an eight-hour workday. (AR 23.) Dr. Kendrick also found that Plaintiff could frequently reach, handle, finger, and feel; occasionally operate foot controls on the left, bend, stoop, crouch, balance, and climb ramps and stairs; and never kneel, crawl, climb ladders and scaffolds, operate foot controls on the right, work at high places, or work around dangerous moving machinery. Dr. Strahl testified that Plaintiff could perform simple routine repetitive tasks, relate well to supervisors and coworkers, and tolerate occasional interaction with the public. (AR 24.) The ALJ found that Dr. Kendrick's and Dr. Strahl's opinions were "supported by the longitudinal medical evidence showing extensive complaints, but relatively little in the way of clinical findings and treatment." (AR 24.)

The ALJ gave less weight to the opinions of the medical consultants, on the ground that they did not examine the claimant or review new evidence available from the hearing. (AR 24.) These opinions, however, were "generally in line with either a light or reduced light RFC and the ability to perform simple unskilled work with occasional contact with others." (AR 25.) The ALJ also gave little weight to the opinions of two doctors who had performed one-time evaluations of Plaintiff, finding that the opined limitations were excessive in light of the medical record or the examination findings. (AR 22, 23, 25.)

The ALJ did not directly address Dr. Cabayan's opinion. Instead, the ALJ noted that "[t]here are multiple references to workers compensation disability." (AR 25.) The ALJ found that "[t]o the extent these statements are seen as medical opinions," he "accord[ed] them little weight" because "[t]hey fail to identify specific limitations, they apply different disability

7

1  standards, and they consider very discreet [sic] periods (a month at a time)." (AR 25.)

2  In total, the ALJ concluded that the evidence did not demonstrate greater limitations than that found by the ALJ, pointing primarily to the clinical findings showing "only modest pathology." (AR 25.) The ALJ also found that Plaintiff's treatment had been "conservative," and that Plaintiff had "refused/postponed right knee/wrist procedures and injection therapy and there is virtually no treatment in 2014." (AR 25.)

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 26.)

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff contends that the ALJ erred by ignoring Dr. Cabayan's medical opinions. (Plf.'s Mot. at 8.) Second, Plaintiff argues that the ALJ posed an incomplete hypothetical to the VE, affecting the ALJ's step five determination. (Plf.'s Mot. at 12.)

### A. Dr. Cabayan's Opinion

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. *Chater*, 81 F.3d at 830. Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

8

### i. Error in Considering Dr. Cabayan's Opinions

As an initial matter, it was error for the ALJ not to expressly explain whether he considered Dr. Cabayan's findings in determining the RFC. "Implicit reasons for rejecting [a] physician's findings are improper because they are neither specific nor legitimate." *Vargas v. Astrue*, No. CV 09-7869-PLA, 2010 WL 3418890, at *8 (C.D. Cal. Aug. 25, 2010). Here, the ALJ did not directly explain whether he had considered Dr. Cabayan's opinion at all, and thus provided no rationale for why he rejected it, despite Dr. Cabayan being an examining physician.

Even if the Court was to assume that the ALJ's general discussion regarding opinions made in the worker's compensation context was meant to address Dr. Cabayan's opinion, the Court finds that the ALJ failed to adequately explain why he accorded Dr. Cabayan's opinion limited weight. Again, the ALJ found that the opinions made in the worker's compensation context were entitled to limited weight because they: (1) failed to identify specific limitations, (2) applied different disability standards, and (3) considered discrete periods of time. (AR 25.)

First, Dr. Cabayan's medical evaluations identified specific limitations as to Plaintiff's functionality, including his ability to lift, reach, push, pull, grab, walk, kneel, bend, use stairs and ladders, squat, and torque. (*See* AR 949, 951, 953, 955, 958, 964, 974, 976, 978, 980, 982, 984, 990, 992, 999, 1001, 1023, 1067, 1071.) It is not clear how these limitations are not sufficiently specific; indeed, Defendant acknowledges that "Dr. Cabayan's treatment records do contain references to certain limitations." (Def.'s Opp'n at 18.) Thus, the ALJ's rationale that Dr. Cabayan's records did not identify specific limitations has no basis in the record.

Second, even if Dr. Cabayan's records were obtained in the course of worker's compensation proceedings, the ALJ still had a duty to evaluate the medical findings. Notably, in *Coria v. Heckler*, the Third Circuit found that it was error to disregard medical evidence obtained for a worker's compensation hearing. 750 F.2d 245, 248 (3d Cir. 1984). Although the Third Circuit acknowledged that "a worker's compensation hearing, unlike a Social Security disability hearing, may be adversarial in nature, this should not affect the reliability of the objective medical findings of the examining physician." *Id.* Thus, "the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by

9

the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Id.*

District courts in the Central District of California have likewise required that the ALJ consider the medical findings from worker's compensation claims in the social security context. For example, in *Booth v. Barnhart*, the district court found that "the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, the ALJ should "'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." *Id.* at 1106. In short, the ALJ's decision "should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." *Id.*; *see also Vargas*, 2010 WL 3418890, at *8 ("[n]otwithstanding the differences between the disability ratings in workers' compensation and social security cases, the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding") (internal quotation omitted); *Heun-Davidson v. Berryhill*, No. ED CV 16-1569-PLA, 2017 WL 5054657, at *6 (C.D. Cal. Nov. 1, 2017) ("An ALJ may not disregard a medical opinion simply because it was initially elicited in a state workers' compensation proceeding. Instead, an ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way he would evaluate records obtained otherwise") (internal quotation and modifications omitted).

The Court finds the reasoning in *Coria* and the above district court cases to be persuasive. Simply because medical evidence was derived from a worker's compensation proceeding does not mean the ALJ is not required to review that medical evidence and explain why such evidence should be afforded particular weight. The ALJ should have considered the underlying medical evidence as applicable to the social security disability determination, and the failure to do so was

error. This is particularly the case with respect to Dr. Cabayan, who saw Plaintiff numerous times between March 2011 and May 2013.

Finally, the Court rejects the ALJ's rationale that Dr. Cabayan's opinions were due limited weight because they covered discrete periods of time. Defendant argues that what the ALJ meant was that Dr. Cabayan provided evaluations on a monthly basis, and that his "assessment was not based on total and permanent disability for over a 12 month period of time, as required for Social Security disability benefits . . . ." (Def.' Opp'n at 18.) Defendant fails to acknowledge, however, that Dr. Cabayan's records covered a period of over two years, specifically March 2011 through May 2013. While each of the approximately twenty opinions concerned a shorter time frame, together they describe Plaintiff's condition over a period far longer than one year. The fact that there were multiple opinions during this period of time does not mean that all of those opinions should be rejected.

For those reasons, the Court finds that the ALJ erred because he failed to give clear and convincing reasons for rejecting Dr. Cabayan's opinion.

### ii. Harmless Error

Defendant argues that even if Dr. Cabayan's treatment records were not discussed by the ALJ, the error was harmless because "many of the limitations Dr. Cabayan identified are implicitly incorporated, even if not specifically discussed, into the RFC." (Def.'s Opp'n at 16.) For example, Defendant argues that Dr. Cabayan's finding that Plaintiff could not handle more than ten to fifteen pounds of lifting was incorporated because the RFC limited Plaintiff to carrying fifteen pounds occasionally and ten pounds frequently. (*Id.*) Dr. Cabayan also stated in various reports that Plaintiff could continue with intermittent sitting, standing, and walking, which Defendant contends was incorporated because the ALJ found that Plaintiff could stand and/or walk for four hours, and sit for six hours, and required flexibility to alternate sitting and standing every forty-five minutes for two minutes. (*Id.*; *see also* AR 19.)

While some aspects of the RFC are consistent with Dr. Cabayan's opinion, the RFC is not entirely consistent. For example, while Defendant points to Dr. Cabayan's opinion that Plaintiff could intermittently sit, stand, and walk, Dr. Cabayan's most recent medical opinion in May 2013

11

found that Plaintiff "c[ould] barely walk," which suggests a greater limitation than the RFC's finding that Plaintiff could stand and/or walk for four hours. (AR 1071.) Dr. Cabayan also found in December 2012 that Plaintiff should avoid overhead reaching and repetitive use of upper extremities, in contrast to the RFC's finding that Plaintiff could frequently reach, handle, finger, and feel with the upper extremities. (AR 974.) Therefore, the Court finds that the failure to address Dr. Cabayan's opinions was not harmless, and that the case should be remanded so that the ALJ can consider Dr. Cabayan's opinion under the standards of social security disability, and whether it affects the RFC.

### B. Hypothetical

Plaintiff also argues that the ALJ erred because the hypothetical he posed to the VE did not include all limitations, specifically the RFC's limitation that Plaintiff perform no more than "simple, routine, repetitive tasks." (Plf.'s Mot. at 12.) Defendant responds that there was no error because the ALJ asked the VE to identify unskilled jobs, and the VE identified jobs that had a specific vocational preparation level of 2 ("SVP level 2"). (Def.'s Opp'n at 19.) Moreover, Defendant contends that because SVP level 2 jobs constitute unskilled work under the regulations, it is consistent with the ALJ's RFC assessment for simple and repetitive tasks, and thus any error was harmless.

The Court agrees with Defendant that the failure to specifically include "simple, routine, repetitive tasks" in the hypothetical is harmless. In *McGarrah v. Colvin*, the Ninth Circuit found, in an unpublished decision, that the ALJ erred by failing to include a limitation to simple tasks, but that the error was harmless because the VE identified jobs that were SVP level 2, which corresponds to "unskilled work." 650 Fed. Appx. 480, 480 (9th Cir. 2016). "Unskilled work," in turn, "is defined as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" Thus, the VE's answer to the ALJ's hypothetical would not have been different even if the ALJ had included a limitation to simple work. *Id.* Likewise, in *Meissl v. Barnhart*, the district court found that a person who was limited to carrying out simple, repetitive instructions could perform a SVP level 2 job. 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005); *see also Hann v. Colvin*, Case No. 12-cv-6234-JCS, 2014 WL 1382063, at *16 (N.D. Cal.

12

Mar. 28, 2014) ("RFC limitations to 'simple, routine' instructions, as well as 'one- to two-step' instructions, can both be consistent with Reasoning Level 2"); *Taylor v. Astrue*, No. CV 12-1253-OP, 2012 WL 6062046, at *6 (C.D. Cal. Dec. 4, 2012) ("the Court finds that the DOT's reasoning development Level 2 requirement does not conflict with the ALJ's prescribed limitation that Plaintiff could perform only simple repetitive" tasks"); *Racette v. Astrue*, No. 1:08-cv-1645 GSA, 2010 WL 1286786, at *18 (E.D. Cal. Mar. 29, 2010) ("the reasoning levels for two of the three jobs identified by the VE . . . both involve level two reasoning and are not in conflict with the ALJ's limitation to simple repetitive task[s] and unskilled work"). Notably, the Third and Tenth Circuits have also found that SVP level 2 jobs are consistent with an individual who can only perform simple, routine, and repetitive tasks. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed. Appx. 210, 214 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [the plaintiff's] work be simple, routine and repetitive").

Thus, the Court finds that even if the ALJ erred by failing to specifically include a limitation of simple, routine, repetitive tasks in his hypothetical to the VE, the error was harmless because the VE's identification of SVP level 2 jobs is consistent with an individual who can only perform simple, routine, repetitive tasks.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED. The Court remands this case for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: March 22, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge